IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NANCY PIRRONE, | ) | CASE NO.  5:11-CV-2248 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 11).
The issue before the undersigned is whether the final decision of the Commissioner of Social
Security (the "Commissioner") denying Nancy Pirrone's application for a Period of Disability
and Disability Insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §416(i)
and 423, is supported by substantial evidence and therefore, conclusive.

For the reasons set forth below, the undersigned VACATES and REMANDS the decision
of the Commissioner.

## I. PROCEDURAL HISTORY

On February 28, 2008, Plaintiff Nancy Pirrone ("Plaintiff" or "Pirrone") applied for a
Period of Disability and Disability Insurance benefits.  (Tr. 145-46, 53).  Plaintiff alleged she
became disabled on February 4, 2006, due to suffering from a traumatic brain injury ("TBI") and
cognitive deficits.  (Tr. 145, 176).  The Social Security Administration denied Pirrone's
application for benefits initially and upon reconsideration.  (Tr. 58-62, 67-69).  Thereafter,
Plaintiff requested a hearing before an administrative law judge to contest the denial of her
application.  (Tr. 71-72).  The administration granted Plaintiff's request and scheduled a hearing.
(Tr. 73-74).

On June 11, 2010, Administrative Law Judge Julia Gibbs (the "ALJ") convened a hearing via video to evaluate Plaintiff's application.  (Tr. 25-52).  The ALJ presided over the hearing from Falls Church, Virginia, while Plaintiff, counsel, and a vocational expert appeared in Cleveland, Ohio.  (Tr. 27).  During the proceeding, the ALJ heard testimony from Plaintiff and the vocational expert.  (Tr. 25-52).

On August 18, 2010, the ALJ issued an unfavorable decision finding Pirrone was not disabled.  (Tr. 10-20).  The ALJ applied the five-step sequential analysis,[1] and concluded Plaintiff retained the ability to perform work which existed in significant numbers in the national economy.  (*Id.*).  Following the issuance of this decision, Pirrone sought review of the ALJ's decision from the Appeals Council.  (Tr. 6).  However, the council denied Pirrone's request,

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. § 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

thereby making the ALJ's ruling the final decision of the Commissioner.  (Tr. 1-3).  Plaintiff

now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C.§405(g).

II.  PERSONAL BACKGROUND INFORMATION & PERTINENT MEDICAL HISTORY

Pirrone was born on December 18, 1955.  (Tr. 28).  Accordingly, at the time of the

hearing, she was considered as a person "closely approaching advanced age" for Social Security

purposes.  *See* 20 C.F.R. § 404.1563(d).  Plaintiff graduated from high school and has past

relevant experience working as a housekeeper, nursery school attendant and an office helper.

(Tr. 183, 48-49).

Pirrone's impairments generally stem from a hit and run accident she suffered as a

pedestrian.  On February 4, 2006, Pirrone was struck by a motor vehicle and shortly thereafter

taken via lifeflight to Hillcrest Hospital.  (Tr. 242).  Plaintiff suffered a "significant traumatic

brain injury" as a result of the accident and was hospitalized from February 16, 2006 through

March 7, 2006.  (Tr. 234, 242).  In the months following the accident, Pirrone underwent speech

pathology and rehabilitation psychology treatment.  (Tr. 271-72, 283-300).  However, as of

November 2006, Plaintiff was still experiencing problems with dizziness, verbosity, occasional

anger spells and anxiety.  (Tr. 242, 244).

On May 20, 2008, Plaintiff presented to Dr. Deborah Koricke, for a psychological

consultative examination, (Tr. 308-13), "to determine the existence of any learning or

psychological disorder which would limit her ability to function on a daily basis."  (Tr. 308).

Plaintiff complained to Dr. Koricke of memory deficits and cognitive deterioration.  (Tr. 309).

The doctor noted that Plaintiff struggled to maintain her focus and attention throughout the

testing.  (Tr. 310).  Overall, Dr. Koricke diagnosed Pirrone with a cognitive disorder (not

otherwise specified) due to her TBI.  (Tr. 312).  With regard to her mental capacity to work, Dr.

3

Koricke opined that Plaintiff's ability to relate to others was mildly impaired. (*Id*.). However, the doctor indicated that Pirrone was moderately impaired in her abilities to maintain the attention, persistence and pace needed to perform simple repetitive tasks and to withstand the stresses and pressures of day-to-day work activity. (Tr. 313). Furthermore, Dr. Koricke concluded Plaintiff suffered from a moderate to marked limitation in the area of understanding, remembering and following instructions as a result of her cognitive disorder. (*Id*.).

On June 6, 2008, Dr. Cindy Matyi, a state agency consultant, reviewed Plaintiff's medical file and assessed her mental residual functional capacity ("RFC"). (Tr. 315-17). Based on her review, Dr. Matyi opined that Pirrone's ability to relate to others was only mildly impaired. (Tr. 317). However, she indicated that Plaintiff had moderate limitations in her capacity to maintain attention and concentration, and to withstand the stress and pressure of daily work. (*Id*.). Moreover, Dr. Matyi concluded Pirrone was markedly impaired in her ability to understand, remember and follow detailed instructions, although Dr. Matyi believed Pirrone could understand, remember and follow simple one and two step instructions. (*Id*.). Thus, Dr. Matyi opined Pirrone was able "to perform simple, repetitive work in a setting with few distractions." (*Id*.). On October 7, 2008, state agency reviewer, Dr. Aracelis Rivera, affirmed Dr. Matyi's assessment as written. (Tr. 339).

On June 27, 2008, Plaintiff's treating physician, Dr. Christopher Loyke, provided a statement to the Bureau of Disability Determination regarding Plaintiff's physical condition. (Tr. 234). Dr. Loyke confirmed that Plaintiff had suffered a traumatic brain injury in 2006, for which she was treated by a different doctor. (*Id*.). He also expressed his opinion that Plaintiff was unable to work due to her cognitive impairments. (*Id*.).

4

On September 26, 2008, Dr. Loyke prepared another statement to the bureau along with an assessment of Pirrone's physical RFC. (Tr. 338, 347-48). Dr. Loyke stated that he had treated Plaintiff since 1999, and again expressed his opinion that she was permanently disabled. (Tr. 338). The doctor noted that Pirrone was unable to carry or lift ten pounds, or to sit, stand or walk for two hours during a normal workday. (Tr. 347). He further commented that Pirrone would need to alternate between sitting, standing and walking and would need to lie down at unpredictable times throughout the day due to her fatigue. (*Id*.). Dr. Loyke indicated that all of these restrictions were as a result of Plaintiff's cognitive defects due to her TBI. (Tr. 348). Additionally, he opined Plaintiff could only reach, handle, finger, feel, push or pull on a "less than occasional[]" basis, though when prompted he did not list what medical findings supported this conclusion. (*Id*.). Finally, Dr. Loyke concluded Pirrone would miss work more than three days of work each month. (*Id*.).

### III.  ALJ's RULING

The ALJ made the following findings of fact and conclusions of law in applying the five-step sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 4, 2006, her alleged onset date. (Tr. 12). At step two, the ALJ ruled Plaintiff suffered from one severe impairment: a cognitive disorder. (Tr. 12-13). But, at step three, the ALJ found that this impairment did not meet or equal one of the listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-14).

Before moving to the next step, the ALJ assessed Plaintiff's RFC to work. The ALJ ruled Pirrone retained the ability to perform work at all exertional levels. (Tr. 14). However, the ALJ noted Pirrone was limited to unskilled routine work. (*Id*.). In light of Plaintiff's capabilities, the ALJ held Pirrone could return to her past work as a housekeeper. (Tr. 18-19). Alternatively, he

concluded she could work as an electrode cleaner or machine feeder.  (*Id.*).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. § 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. § 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide

6

questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

Plaintiff has put forward two objections to the ALJ's decision.  First, Pirrone contends the ALJ improperly rejected the opinions of her treating physician, Dr. Loyke.  Plaintiff also argues that the ALJ provided insufficient reasons for finding her allegations incredible.

### 1.  Treating Physician's Opinion

It is well-recognized that an ALJ must give special attention to the findings of a claimant's treating source.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. § 404.1527(c)(2).[2]  The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight under this framework, the ALJ must determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations.  20 C.F.R. § 404.1527(c)(1)-(6).  The

---

[2] Effective March 26, 2012, section 404.1527 of the Code of Federal Regulations was amended. Paragraph (d) was redesignated as paragraph (c).  *See* 77 F.R. 10651-01, 2011 WL 7404303.

regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the opinion.  *Id.* at (c)(2).

In this case, the ALJ's analysis of Dr. Loyke's opinion does not comport with the requirements of the treating source doctrine.  At the outset, the Court notes that the ALJ never specified how much weight she afforded the doctor's findings.  Nevertheless, it is clear the ALJ did not accept the doctor's findings as the ALJ concluded Plaintiff could perform work at all exertional levels, though Dr. Loyke indicated Pirrone could not so much as lift 10 pounds, or sit, stand or walk for two hours.   Additionally, the Court notes that the doctor's statements regarding Pirrone's employability were not entitled to any deference as these statements did not reflect a medical opinion.  20 C.F.R. § 404.1527(d)(1).

Initially, the ALJ had the responsibility of determining whether the physician's opinion was entitled to controlling weight.  Here, the ALJ held that Dr. Loyke's opinion was conclusory, failed to provide a sufficient explanation of the findings on which the opinion was based and was inconsistent with the normal objective physical findings reflected in the doctor's treatment notes.  All these were sound reasons for the ALJ to decline to give the opinion controlling weight.

But, this finding did not end the ALJ's inquiry.  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) ("Even if the ALJ does not give controlling weight to a treating physician's opinion, he must still consider how much weight to give it ….").  According to the dictates of the doctrine, the ALJ was then obligated to consider other factors, outlined in 20 C.F.R. § 404.1527(c)(2) through (6), to determine how much weight to assign the opinion, and to provide *good reasons* "supported by the evidence in the case record" for that weight.  *Id.*

It is here where the ALJ's analysis fell short.  Although the ALJ discredited Dr. Loyke's opinion for reasons that facially comported with the regulation, further review demonstrates that

the ALJ's ultimate conclusions tended to be based upon her own lay opinion in areas beyond her expertise and judgment.  For example, the ALJ ruled that Dr. Loyke's findings were less than credible because Plaintiff's visits with him were relatively infrequent, and because the "course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled."  (Tr. 17).  While it was appropriate for the ALJ to inquire into the frequency of Dr. Loyke's examinations of Plaintiff, it was not appropriate for the ALJ to make medical judgments about the doctor's course of treatment for Plaintiff.  *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009).  "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."  *Simpson*, 344 F. App'x at 194 (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

In this case, there was no medical evidence in the record suggesting that Dr. Loyke's treatment of Plaintiff was somehow deficient or lacking.  Yet, the ALJ's critique of the physician's findings implies that if the doctor's opinion were sound, he would have charted a different course of treatment for Plaintiff.  But, this assumption is based purely upon the ALJ's independent judgment.  Consequently, this was not a valid basis for the ALJ to reject the doctor's findings.  *See Jiles v. Barnhart*, No. 05-G-0861-S, 2006 WL 4402937, at *4 (N.D.Ala. Sept. 11, 2006) (ALJ's rejection of treating physician's opinion was erroneously based on ALJ's "uninformed medical evaluations").

The ALJ also discredited Dr. Loyke's opinion because she concluded it "sharply contrast[ed]" with other objective evidence in the record.  (Tr. 18).  While consistency with the record is a legitimate consideration by which to judge a doctor's findings, the ALJ did not clearly explain how or what aspect of Dr. Loyke's opinion was inconsistent with other evidence in the

record.   The Commissioner suggests that the ALJ was comparing Dr. Loyke's findings with those issued by consultative examiner, Dr. Koricke, or state agency reviewer, Dr. Cindy Matyi. But, both Dr. Koricke and Dr. Matyi limited their opinions to an assessment of Plaintiff's *mental* and *psychological* impairments.  (*See* Tr. 308-13, 315-17).   On the other hand, Dr. Loyke's opinion centered on Plaintiff's *physical* capabilities in light of her cognitive defects.   Thus, the other doctors' opinions were not fair comparators with which to judge the veracity or reasonableness of Dr. Loyke's findings, as they were evaluating two different aspects of Plaintiff's overall health.

The regulations also direct an ALJ to consider the physician's area of specialization.  20 C.F.R.§404.1527(c)(5).  The ALJ also discredited Dr. Loyke's opinion because the ALJ believed it was partly based on Pirrone's cognitive disorder, an impairment which the ALJ viewed as outside of Dr. Loyke's expertise, as he was not a mental health specialist.  However, Dr. Loyke noted that Plaintiff's cognitive defects were due to her TBI – a condition which fell within Dr. Loyke's realm of expertise given his position as a family practitioner.   Therefore, the ALJ's decision to discredit the doctor's findings on this ground is not without criticism, and would not alone be sufficient to discount all of the doctor's findings.

The ALJ's failure to provide good reasons for the weight given to Dr. Loyke's opinion was not harmless.  Had the ALJ accepted Dr. Loyke's opinion, even partly, he may have reached a different decision regarding Pirrone's RFC and consequently limited her to something less than the full range of light or sedentary work.  Consequently, remand would not be a futile gesture, but is necessary in order for the ALJ to provide *good reasons*, supported by evidence in the record, for her treatment of Dr. Loyke's opinion.

10

2.  Plaintiff's Credibility

Pirrone also contends the ALJ discredited her claims regarding the severity of her impairments for improper reasons.  This circuit follows a two-part test in evaluating a claimant's statements of disabling symptoms.  *20 C.F.R. § 404.1529(c)*; *Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994).  First, the ALJ must determine whether there is objective medical evidence showing the existence of an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms.  *20 C.F.R. §404.1529(c)*.  Second, if the ALJ finds that an underlying impairment exists, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work.  *Id*.  In evaluating the claimant's symptoms, the ALJ should consider the individual's daily activities, the location, duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms, other treatment taken, and any other measures used to relieve the claimant's symptoms.  *Id.; Felisky,* 35 F.3d at 1039-40.

Because the ALJ has the opportunity to observe the claimant's demeanor during the hearing process, he or she is best equipped to evaluate the witness' credibility.  *Rogers v. Comm'r of Soc. Sec.* 486 F.3d 234, 247-48 (6th Cir. 2007).  Yet, the ALJ is not permitted to make credibility determinations based upon "intangible or intuitive notion[s]" about an individual, *id.*, instead, the ALJ's credibility finding must be supported by substantial evidence. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).  When an ALJ decides to discredit a claimant, the ALJ's written decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to

11

the individual's statements and the reasons for that weight." SSR 96-7p; *Cunningham v. Astrue*, 360 F. App'x 606, 613 (6th Cir. 2010).

In the instant case, the ALJ ruled that Pirrone's impairments could reasonably be expected to cause her alleged symptoms, however, the ALJ felt that Pirrone's statements regarding the intensity, persistence and limiting effects of those symptoms were not credible. Plaintiff objects to the ALJ's reasons for discounting her claims.

To begin, Plaintiff attacks the ALJ's decision to discredit her based on her decision to leave her job in the summer of 2005. Pirrone notes that she does not allege she became disabled until February 2006, and therefore argues that her decision to explore other career opportunities in 2005 was irrelevant. The undersigned agrees. Plaintiff left her job several months prior to her onset date and neither the ALJ nor the Commissioner has explained how or why this decision undermined Plaintiff's credibility regarding the severity of her impairments.

Plaintiff also challenges the ALJ's decision to discredit her based on what the ALJ viewed as a lack of treatment. The ALJ ruled that Pirrone "ha[d] not generally received the type of medical treatment one would expect for a totally disabled individual." (Tr. 17). The ALJ also highlighted that Plaintiff did not take any medication or attend therapy. But, Pirrone points out that no further therapy or medication has been prescribed for her, nor has any physician indicated that she has failed to comply with her treatment.

As previously addressed, it appears that the ALJ's conclusions regarding Plaintiff's treatment, or lack thereof, were simply based on the ALJ's lay opinion. The ALJ did not identify any medical evidence which supported her conclusion that Pirrone should have sought or received additional treatment for her ailments. Consequently, the ALJ's decision to discredit Plaintiff on this ground is not supported by the record.

12

Notwithstanding, the Commissioner argues that the ALJ provided legitimate reasons for discounting Pirrone's testimony.  For instance, the ALJ noted that Plaintiff's prior treatment for dizziness and speech and cognitive issues in 2006 was generally successful in controlling her symptoms.  The Commissioner also argues that the ALJ properly considered Plaintiff's activity level in assessing her credibility, noting that she was able to prepare meals, perform household chores, and did not need reminders to care for her own personal needs or take her medication.

Although these were appropriate factors for the ALJ to consider in weighing Plaintiff's credibility, the undersigned is not convinced that they are sufficient alone to justify the ALJ's decision to discredit Pirrone.  Plaintiff's ability to perform these types of routine activities does not necessarily show that she can perform substantial gainful activity.  *See Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) (claimant's ability to perform basic daily activities was not indicative of ability to work because activities were intermittent and could be performed while suffering pain); *see also Biller v. Astrue*, No. 1:09-cv-1763, 2010 WL 5481746, at *8 (N.D.Ohio Dec. 8, 2010).  Plaintiff's claim for disability is largely based on her inability to maintain concentration, persistence and pace, as well as problems with stress and fatigue.  Pirrone testified that although she can perform various tasks around her home, she has to write reminders for herself and it takes her longer to complete simple activities.  (Tr. 33-38).  Thus, the mere fact that she can complete routine tasks does not speak to how long it takes her to complete them.  Accordingly, it is not clear whether this was a proper basis for the ALJ to discredit her allegations.

Given the totality of the errors committed by the ALJ in evaluating Dr. Loyke's opinion and assessing Plaintiff's credibility, the Court finds that remand is proper.  Although the evidence presented to the Court is not so overwhelming as to cause the Court to direct an award

of benefits, the ALJ's decision was not sufficiently specific and clear to allow the undersigned to decipher whether there is substantial support for it in the record.  Remand will allow the ALJ to re-evaluate Dr. Loyke's opinion and Plaintiff's credibility and adequately explain her ultimate reasons for crediting or rejecting each of them.

VII.  <u>DECISION</u>

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case back to the Social Security Administration.

IT IS SO ORDERED.

<u>s/ Kenneth S. McHargh</u>
Kenneth S. McHargh
United States Magistrate Judge

Date:  <u>March 4, 2013</u>.

14